# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **FERNANDO CORONADO** and **TABETHTHA CORONADO**, <br><br> **Plaintiffs,** <br><br> vs. <br><br> **K. OLSEN** and **JACOB HILL**, West Valley City Police Officers, and **WEST VALLEY CITY**, a political subdivision, <br><br> **Defendants**. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS IN PART** <br><br><br> Case No. 2:18-cv-83 <br><br> Judge Clark Waddoups |

Before the court is the motion to dismiss by the defendants K. Olsen, Jacob Hill, and West Valley City ("Defendants"), which seeks to dismiss all claims that the plaintiffs, Fernando Coronado and Tabeththa Corondao ("Plaintiffs") have filed against them. The motion has been fully briefed, and this court heard argument on the same on January 24, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court now enters this order **DENYING in part** and **GRANTING in part** Defendant's motion to dismiss.

## BACKGROUND[1]

On August 3, 2016, Tabeththa Coronado ("Mrs. Coronado") and her husband, Fernando Coronado ("Mr. Coronado") were having marital difficulties. Am. Compl. at ¶¶ 13–14, ECF No. 3. On that date, Mr. Coronado was depressed, "inebriated, disorientated, and in emotional distress"

---

[1] The facts presented herein are synthesized from Plaintiff's amended complaint and video footage captured by a body camera worn by one of the named defendants. This video is referenced in Plaintiffs' amended complaint (*see* ECF No. 3 at ¶ 36), was submitted to this court as an exhibit to Defendants' motion to dismiss (*see* ECF No. 18-1), and was played in its entirety by both Plaintiffs and Defendants at oral argument on Defendants' motion. As such, this court may consider it without converting Defendants' motion to dismiss into a motion for summary judgment.

and had threatened suicide, and Mrs. Coronado called 911 for assistance.  *Id.* at ¶¶ 13–16, 24.

Officers from West Valley City's Special Weapons and Tactics ("SWAT") unit, including

Defendants K. Olsen and Jacob Hill (the "Defendant Officers"), responded to Plaintiffs' residence,

a fourth floor apartment.  *Id.* at ¶¶ 17–18.  Plaintiffs' apartment is accessed by an open-air cement

landing, and open-air stairwells are located on the landing's north and south ends.  *Id.* at ¶¶ 19, 34;

*see also* Footage of Coronado Encounter, ECF No. 18-1, at 0:00–0:26.  Up to a dozen officers in

full armor and SWAT equipment positioned themselves on both stairwells.  ECF No. 3 at ¶ 19.

Officers spoke to Mr. Coronado through his closed apartment door for a period of time, and

eventually Mr. Coronado exited his apartment and came out onto the landing.  *Id.* at ¶ 18.  When

Mr. Coronado exited this apartment, he wore only a pair of shorts; he was barefoot, naked from

the waste up, and clearly unarmed.  *Id.* at ¶¶ 20, 22.  Once Mr. Coronado exited his apartment, the

officers began giving him overlapping orders, which he did not follow.  *Id.* at ¶¶ 21, 23–27; *see*

ECF No. 18-1 at 0:00–0:49.  Mr. Coronado was never told that he was under arrest.  ECF No. 3 at

¶ 28; *see* ECF No. 18-1 at 0:00–0:49.

While Mr. Coronado was conversing with officers positioned on the stairwell closest to his

apartment, the Defendant Officers came onto the landing via the opposite stairwell.  *See* ECF No.

18-1 at 0:20–0:49.  The Defendant Officers approached Mr. Coronado on the landing with their

Tasers out and ready to deploy.  ECF No. 3 at ¶ 31; *see* ECF No. 18-1 at 0:20–0:49.  The

overlapping events that commenced over the next five seconds serve as the basis for Plaintiffs'

amended complaint and govern Defendants' motion to dismiss.  *See* ECF No. 18-1 at 0:44–0:49.

Once the Defendant Officers were on the landing, Mr. Coronado turned to them and took

approximately three steps in their direction.[2]  *See* ECF No. 18-1 at 0:44–0:49.  As Mr. Coronado

---

[2] As will be discussed more fully below, the nature of Mr. Coronado's advance towards the officers is material to this matter and is hotly disputed between the parties.

was taking those steps, the Defendant Officers ordered him to "get on the ground." *See* ECF No. 18-1 at 0:45–0:47. Mr. Coronado did not comply with the Defendant Officers' first two commands, and during the third recitation of the command, one of the Defendant Officers deployed his Taser, which struck Mr. Coronado in the torso. *See id.*; *see also* ECF No. 3 at ¶ 71. The other Defendant Officer deployed his Taser immediately thereafter, which also struck Mr. Coronado in the torso. *See* ECF No. 18-1 at 0:47–0:48. Mr. Coronado collapsed and fell forward, striking his head on the floor of the landing and a door. *See* ECF No. 18-1 at 0:47–0:49; *see also* ECF No. 3 at ¶¶ 72–73. Mr. Coronado suffered serious injuries from the fall.

On February 21, 2018, Plaintiffs initiated this civil rights action against Defendants, alleging excessive force and unconstitutional policies under 42 U.S.C. § 1983, flagrant violation of rights under Article I, § 14 of the Utah Constitution, and loss of consortium. Defendants ask this court to dismiss each of Plaintiffs' claims.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In assessing Defendants' motion, this court must "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

**DISCUSSION**

**A. The Defendants Officers' use of force was not objectionably reasonable.**

Claims of excessive force are evaluated using an objective-reasonableness standard, where a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "depends on whether the totality of the circumstances justified the conduct at issue." *Id.* at 396 (internal citations omitted). The Supreme Court has instructed courts tasked with determining the reasonableness of officers' actions to pay "careful attention to the facts and circumstances of each particular case" and has provided three factors that should be considered in making the decisions: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (*citing Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985)). Defendants assert that Plaintiffs' claims should be dismissed because as a matter of law, the Defendant Officers' use of a Taser against Mr. Coronado in this situation was objectively reasonable. This court disagrees.

On a motion to dismiss, this court must accept as true all of Plaintiffs' well-pled factual allegations and view those allegations in the light most favorable to Plaintiffs. *See Schrock*, 727 F.3d at 1280. Thus, for purposes of this motion, the court accepts Plaintiffs' assertion that "[Mr.] Coronado neither expressed nor exhibited any aggression toward the officers" and rejects Defendants allegation that Mr. Coronado "aggressively lunged towards" the officers. *Compare* ECF No. 3, at ¶ 37 *with* ECF No. 18, at p. 5, ¶ 10. Defendants attempt to minimalize the importance of this distinction, asserting that "[u]ltimately, how the parties characterize [Mr.

4

Coronado's] actions is not relevant to the motion. As shown in the video and alleged in the Amended Complaint, [Mr. Coronado] moved towards the officers. That is all that is necessary for the West Valley Defendants' motion." *See* Defs.' Reply in Supp. of Mot to Dismiss, ECF No. 29, at p. 5. This court refuses to find that as a matter of law, it is objectively reasonable for officers to taser any suspect who moves towards them—such a broad sentiment does not pay homage to "the facts and circumstances of [a] particular case." *See Graham*, 490 U.S. at 396. Rather, the reasonableness of the Defendant Officers' conduct must be determined by analyzing the specific facts and actions of this situation under the three *Graham* factors.

The first *Graham* factor concerns the severity of the crime at issue. *See id*. Defendants assert that this factor weighs in their favor because Mr. Coronado was "a threat to himself and others," was "drunk, disoriented and mentally disturbed," "had threatened suicide," "refused to comply with repeated instructions by officers to get on the ground and surrender," and "subsequently[] pled guilty to threatening with or using a weapon in a fight." *See* ECF No. 18, at p. 9. Clearly, it was not a crime for Mr. Coronado to be disoriented and mentally disturbed, nor was it a crime for him to be drunk in his own home. Further, because reasonableness of force "must be judged from the perspective of a reasonable officer *on the scene*," only the knowledge that the officers gained from Mrs. Coronado's 911 call or from their observations on the scene are relevant. *See Graham*, 490 U.S. at 396 (emphasis added). Mr. Coronado's subsequent guilty plea to threatening with a weapon could not have been known to the officers at the time they tased Mr. Coronado and is therefore irrelevant to this analysis. While Mr. Coronado's refusal to comply with officers' instructions may have amounted to a misdemeanor, this minor offense is at least partially mitigated by the fact that during his interactions with Defendants, Mr. Coronado was never told that he was under arrest. *See* ECF No. 3 at ¶¶ 28, 32. While threatening suicide

is a serious matter, it is not a crime, and the severity of this offense was diminished by the fact

that Mr. Coronado was clearly unarmed and had no means to actually commit suicide. *See id.* at

¶¶ 20, 22. Thus, the only crime the officers understood Mr. Coronado to have committed was his

failure to comply with orders. This did not warrant the force used by the Defendant Officers,

and the first *Graham* factor therefore weighs against Defendants.

The second factor requires this court to determine whether Mr. Coronado posed "an

immediate threat to the safety of the officers or others." *See Graham*, 490 U.S. at 396. While

this issue is contested, on a motion to dismiss, this court must accept Plaintiffs' assertion that Mr.

Coronado "neither expressed nor exhibited any aggression toward the officers." ECF No. 3, at ¶

37. Defendants contest that this court is not required to accept Mr. Coronado's assertion because

it is conclusory. The court does not find this statement to be conclusory, as it is supported by the

video of Defendants' encounter with Mr. Coronado, at least insofar as the same is viewed in "the

light most favorable to the plaintiff."[3] Thus, under this adoption of facts, it is clear that the

second *Graham* factor weighs in favor of Mr. Coronado. *See Morris v. Noe*, 672 F.3d 1185,

1196 (10th Cir. 2012) (finding that the second *Graham* factor "weighs heavily" in plaintiff's

favor even though he "'walked toward the group of officers' . . . which might present some

threat," because he "carried no weapon, made no overt threats, and did not get within reach").

The third *Graham* concerns whether Mr. Coronado was actively resisting arrest or

---

[3] This video further shows that Defendants' assertion that when Mr. Coronado "aggressively lunged towards them," they "had their backs to a railing and staircase, four floors above the ground" is exaggerated. First, while it is clear that Mr. Coronado advanced towards the officers, the court questions whether any reasonable person would definitively classify his movement as an "aggressive lunge." *Compare* ECF No. 18, at p. 9 *with* ECF No. 18-1 at 0:44–0:49. Further, the video establishes that the Defendant Officers were approximately in the middle of the landing when Mr. Coronado began advancing towards them and that their backs were far from being against the landing's railing or stairs at the time they deployed their Tasers. *See* ECF No. 18-1 at 0:44–0:49. While the nature of Mr. Coronado's advance and their presence on a fourth floor landing are factors that the Defendant Officers may have considered in determining the risk Mr. Coronado posed, Defendants will not earn the dismissal of Plaintiffs' claims by exaggerating the factual support for those factors.

attempting to evade arrest by flight. He was not; Mr. Coronado was neither under arrest not told

that he was facing arrest. *See* ECF No. 3 at ¶ 28; *see* ECF No. 18-1 at 0:00–0:49. Further,

because officers were located on both stairwells leading to his apartment, there was nowhere for

Mr. Coronado to flee—his only option to avoid the officers was to re-enter is apartment, which

he never attempted to do. *See* ECF No. 3 at ¶ 19; *see* ECF No. 18-1 at 0:00–0:49. Nevertheless,

Defendants argue that Mr. Coronado was "actively resisting arrest" because he refused to comply

with repeated instructions to get on the ground. ECF No. 18 at p. 10. Defendants, however, fail

to cite to a single case that recognizes that an individual's failure to immediately comply with an

order[4] constitutes active resistance of arrest. While the Tenth Circuit has indicated that a

suspect's noncompliance with an officer's command to halt, together with the fact that she "may

have had a knife[] and was intent on entering a house where her husband and other officers were

located" could have led a "reasonable officer [to] could conclude in those circumstances that her

resistance justified some level of force," this is a far cry from the facts here. *See Cavanaugh v.*

*Woods Cross City*, 718 F.3d 1244, 1252 (10th Cir. 2013). Mr. Coronado was clearly unarmed,

had not exhibited any aggression toward the officers, and had but a moment or two to comply

with the officers' commands before he was tased. *See* ECF No. 3, at ¶ 37; ECF No. 18-1 at

0:44–0:49. Mr. Coronado's alleged resistance did not justify Defendants' use of force.

Defendants assert that they used Tasers to subdue Mr. Coronado "rather than engage in a

physical battle on a fourth floor landing or risk being pushed down the stairs" and argue that a

ruling in Plaintiffs' favor would require "officers to risk bodily injury from a physical

confrontation." *See* ECF No. 18, at pp. 2, 10. While the court acknowledges the risk that

---

[4] Less than four seconds elapsed between the time that Mr. Coronado took his first step toward the Defendant Officers and the deployment of their Tasers. All commands were given in this window of time. *See* ECF No. 18-1 at 0:44–0:49.

officers face and the split-second nature of the decisions that they must make, it refuses to grant Defendants' request to find that as a matter of law it is objectively reasonable for an officer to taser a suspect because he takes a couple of steps towards them. *See* ECF No. 29, at p. 5. Rather, when the facts of this situation are viewed in the light most favorable to Plaintiffs and analyzed under the three *Graham* factors, they do not justify the Defendants Officers' use of force. Defendants' request to dismiss Plaintiffs' claims on the basis that the Defendants Officers' use of force was objectionably reasonable is denied.

### B. Plaintiffs have made a sufficient showing that Defendants are not entitled to Qualified Immunity.

Defendants next assert that they are protected from Plaintiffs' claims under a theory of qualified immunity, and that those claims should therefore be dismissed. "Qualified immunity not only protects public employees from liability, it also protects them from the burdens of litigation." *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff" to establish "that the defendant violated a constitutional right" and "that the constitutional right was clearly established." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (internal citations omitted).

Mr. Coronado has a right under the Fourth Amendment to be free from excessive force. The Defendant Officers' use of Tasers against him "constitute[d] a severe intrusion on the interests protected by the Fourth Amendment." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir.2010). And because that use of force was not justified under the *Graham* factors, it crossed the line into excessive force and constituted a violation of Mr. Coronado's rights. *See id. at* 666; *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016). Mr. Coronado has therefore satisfied *Cortez's* first requirement of dissolving Defendants' qualified immunity.

Under *Cortez's* second requirement, "for a constitutional right to be clearly established,

the contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right." *Quinn v. Young*, 780 F.3d 998, 1004–05 (10th Cir.

2015) (internal citations and quotations omitted). Mr. Coronado can make this showing by

"identifying an on-point Supreme Court or published Tenth Circuit decision that establishes the

unlawfulness of the defendant's conduct" or by demonstrating that "'the clearly established

weight of authority from other courts must have found the law to be as the plaintiff maintains.'"

*Id.* at 1005 (*quoting Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). While a case does

not need to be "directly on point," to pass this test, "existing precedent must have placed the

statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011). Finally, the clearly established right "must be defined with specificity" and not "'at a

high level of generality.'" *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019)

(quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). This need for specificity "is

especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an

officer to determine how . . . excessive force[] will apply to the factual situation the officer

confronts." *Id.* (quoting *Kisela*, 138 S. Ct. at 1153). Because "[u]se of excessive force is an area

of the law in which the result depends very much on the facts of each case . . . police officers are

entitled to qualified immunity unless existing precedent squarely governs the specific facts at

issue." *Id.* (quoting *Kisela*, 138 S. Ct. at 1153). With these standards in mind, the court turns to

the facts at hand and the cases cited by the parties.

At the time Mr. Coronado was tased by the Defendant Officers, he was guilty of, at the

most, the non-violent misdemeanor offense of not complying with orders. He had not threatened

the Defendant Officers, and he was not attempting to resist arrest or flee. Under Tenth Circuit

precedent effective at the time of the facts here, it is "clearly established" that an officer violates

the Fourth Amendment when she "use[s] her Taser against a non-violent misdemeanant who

appeared to pose no threat and who was given no warning or chance to comply with the officer's

demands." *See Cavanaugh,* 625 F.3d at 666–67 (citing *Casey v. City of Fed. Heights*, 509 F.3d

1278, 1281–82 (10th Cir. 2007) ("*Graham* stablishes that force is least justified against

nonviolent misdemeanants who do not flee or actively resist arrest.")).

In *Cavanaugh*, officers responded to a non-emergency call that Ms. Cavanaugh had left

her home after a domestic dispute "with a kitchen knife" and that she "had consumed alcohol and

pain medication." *Id.* at 662–63. An officer encountered Ms. Cavanaugh outside of her home,

but she veered away from him and headed towards her front door. *Id.* at 663. The officer, who

was approximately six feet away from Ms. Cavanaugh, discharged his Taser into her back

"without warning." *Id.* The court determined that the officers' actions were objectionably

unreasonable under *Graham*, finding that 1) "to the extent Ms. Cavanaugh was suspected of any

crime, it was minor"; 2) "Ms. Cavanaugh did not pose an immediate threat to [the officer] or

anyone else at the scene"; and 3) "Ms. Cavanaugh was neither actively resisting nor fleeing

arrest," as she "was not told that she was under arrest." *Id.* Thus, under *Cavanaugh*, the

Defendant Officers were on notice that tasing a non-violent suspect who had only committed a

minor offense and was neither actively resisting arrest nor informed that he is under arrest

amounted to excessive force. *See Lee v. Tucker*, 904 F.3d 1145, 1150 (10th Cir. 2018)

("*Cavanaugh* establishes that the use of a Taser without warning on a non-resisting misdemeant

violates the Fourth Amendment's excessive force protections.").

The facts of this case are also eerily similar to those of *Cardall v. Thompson*, 845

F.Supp.2d, 1182 (D. Utah 2012), and the disposition of that case therefore "squarely governs the

specific facts at issue" here. *See Emmons*, 139 S. Ct. at 503. In *Cardall*, officers responded to a

call that Mr. Cardall was having a psychiatric episode on the side of a highway. *Cardall*, 845

F.Supp.2d, at 1188. When officers arrived, Mr. Cardall was completely naked and refused to

comply with instructions. *Id.* He turned and advanced towards one of the officers,[5] who tased

him twice. *Id.* at 1188–89. Mr. Cardall was tased approximately forty-two seconds after officers

had first commanded him to get down, and he was never warned that he would be tased. *Id.* In

determining whether the officers' use of force was excessive, this court noted that "[c]ase law on

tasings from the Tenth Circuit . . . stresses the importance of whether a warning was given before

the use of the taser" and that the Tenth Circuit and other courts "have stressed that an officer

should hesitate to deploy a taser when the subject is incoherent and he does not appear to

understand the officers' commands." *See id.* at 1191–92 (citations omitted). This court found

that Mr. Cardall "was tased although he was not guilty of any serious crime or attempting to

flee," and that if all factual disputes are resolved in his favor, he "was not a threat to the officers

who impatiently tased him when, in his confusion, he was slow to comply with their demands."

*Id.* at 1194. It ultimately held that "Tenth Circuit case law, as well as authority from other

jurisdictions, explicitly holds that tasing under similar circumstances violated clearly established

Fourth Amendment law." *Id.* The similarity of *Cardall's* facts to this situation—namely that

Mr. Coronado was clearly psychologically distressed and confused, had only committed a minor

offense, and was not a threat—put the Defendant Officers on notice that tasing him amounted to

excessive force in violation of his Fourth Amendment rights.

Defendants assert that Mr. Coronado's continued failure to comply with the Defendant

Officers' orders justified their use of force. However, the Tenth Circuit has also clearly

---

[5] Like the parties here, the plaintiff and defendant in *Cardall* disagreed as to the nature of this advance. Plaintiff asserted that he "took one small step" toward the officer, but defendants argue he "charged" at him. *Id.*

established that force can only be applied to a suspect who is actively resisting arrest, and that

force cannot be excessive. *See Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("It is . . .

clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an

individual who is not suspected of committing a serious crime and who poses no threat to others

constitutes excessive force.")  In *Perea*, officers were called to perform a welfare check on Mr.

Perea after he was involved in a verbal fight.  *Id.* at 1201.  They were informed that the

individual "suffered from mental illness" and "may have been on drugs," but that he did not have

a weapon.  *Id.*  After chasing Mr. Perea on his bicycle, during which chase Mr. Perea violated

traffic offenses, officers "pushed Mr. Perea off his bicycle," and a physical struggle broke out to

detain him.  In the struggle, officers tased Mr. Perea ten times in a span of less than two minutes.

*Id.*  The Tenth Circuit determined that the three *Graham* factors weighed against the officers' use

of force, namely because 1) they had no suspicion that Mr. Perea "had committed a crime prior

to finding him," 2) Mr. Perea was not a danger "to anyone other than himself before they

attempted to effect an arrest," and 3) although the officers were entitled to use "some force

during the period in which [Mr.] Perea was resisting [arrest]," the actual force the officers used

was unreasonable and excessive.  *Id.* at 1202–04.  *Perea* therefore puts the Defendant Officers on

notice that force should not be used on a non-violent or non-threatening suspect *unless* that

suspect is *actively resisting arrest*, and even then, the force used should be no more than is

necessary to subdue the suspect.  Thus, the Defendant Officers should have known that it was

excessive to taser Mr. Coronado when he did not pose a threat to their, or anyone else's, safety,

was only guilty of refusing to comply with their orders, and was not actively resisting arrest.

Defendants offer a number of cases to support their argument that the Defendant

Officers' use of their Tasers against Mr. Coronado was permissible, but in each the officers' use

of force was justified because they were either threatened by or physically engaged with the suspect.  Material to the Eleventh Circuit's holding in *Draper v. Reynolds*, 369 F.3d 1270, 1273 (11th Cir. 2004) was the fact that the officer interpreted the plaintiff's actions as "threatening" and put him "on the defensive."[6]  Similarly, in *Brown v. Cwynar*, 484 F. App'x 676, 680 (3rd Cir. 2012), while the Third Circuit held that the officers did not use excessive force in tasing the suspect, it noted that the force was applied after the officer "had been informed by two dispatch calls that a police officer was in need of assistance" and after "he personally observed [the suspect] scuffling with police officers in a car."  In *Holgers v. South Salt Lake*, 2013 WL 6155298, *8 (D. Utah Nov. 22, 2013), this court found that use of a Taser was appropriate, at least in part because the suspect "presented a risk of harm to the officers."  Finally, in *Youngquist v. Board of County Commissioners for Curry County, New Mexico*, 2016 WL 9725196, *6 (D. N.M. Dec. 13, 2016), the District Court for the District of New Mexico found that the officer's use of a Taser was reasonable after the suspect "resisted less forceful attempts to induce compliance."  Here, Mr. Coronado neither threatened nor physically engaged with the Defendant Officers.  As such, the cases cited by Defendants are materially distinguishable and do not establish as a matter of law that the Defendant Officers' use of force was permissible.  Rather, on August 3, 2016, it was clearly established in the Tenth Circuit, and the Defendant Officers should have known, that tasing a non-violent suspect who was not actively resisting arrest and was only guilty of failing to comply with orders constituted excessive force.  The Defendants are not entitled to qualified immunity.

## C. Plaintiffs' State Law Claims Are Dismissed.

Finally, Defendants argue that Plaintiffs' state law claims should be dismissed because

---

[6] The Tenth Circuit has even distinguished this case, stating "[w]e are not sure that we would have come to the same conclusion on those facts . . . ." *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007).

Plaintiffs have failed to comply with the notice requirements of the Governmental Immunity Act

of Utah and because they fail as a matter of law.  Because the Defendant Officers' actions were

not objectionably reasonable, the Plaintiffs' state law claims do not fail as a matter of law.

Plaintiffs argue that because his state law claim of excessive force arises from a self-executing

constitutional clause, he is not required to comply with the notice requirement of the

Governmental Immunity Act of Utah.  The court agrees.[7]  *See Heughs Land, L.L.C. v. Holladay*

*City*, 2005 UT App 202, ¶ 7, 113 P.3d 1024.

However, that claim is nevertheless dismissed because Mr. Coronado has an alternative

remedy to redress his injury.  Under Utah law, "there is no express statutory right to damages for

one who suffers a constitutional tort," and as such, "a Utah court's ability to award damages for

[a] violation of a self-executing constitutional provision rests on the common law."  *Spackman v.*

*Board of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 20, 16 P.3d 533.  Because

Utah law only permits damages for constitutional violations "under appropriate circumstances,"

a plaintiff attempting to recover such damages must establish three specific elements before

proceeding with a private suit for damages for violation of a self-executing constitutional

provision: (1) that he or she suffered a flagrant violation of his or her constitutional rights; (2)

that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an

injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her

injuries.  *See id.* at ¶¶ 22–25.

Because Mr. Coronado's state law claim for excessive force under Article 1, Section 14

of the Utah Constitution mirrors his federal claim for excessive force under 42 U.S.C. § 1983—

---

[7] The parties disagree as to whether the fact that Mrs. Coronado's loss of consortium claim is derivative means that it also cannot be limited by the Governmental Immunity Act of Utah.  Because the court determines that Mrs. Coronado's claim should be dismissed on other grounds, this decision need not resolve that dispute.

he claims the same damages for the state causes of action as he does for his § 1983 claim—he cannot establish that existing remedies do not provide redress for his injuries. As such, under *Spackman*, Mr. Coronado's state-law claim for excessive force must be dismissed.

This dismissal also requires that Mrs. Coronado's state law claim of loss of consortium be dismissed. Under UTAH CODE § 30-2-11(5), a "spouse's action for loss of consortium shall be derivative from the cause of action existing in behalf of the injured person and may not exist in cases where the injured person would not have a cause of action." Because Mrs. Coronado's claim is tied to Mr. Coronado's state law injury claim, it cannot survive the latter's dismissal.

## CONCLUSION

For the reasons stated above, the court **DENIES in part** and **GRANTS in part** Defendant's motion to dismiss (ECF No. 18). Plaintiffs' state law claims of "Loss of Consortium" under and "Flagrant Violation of Rights" are dismissed, and Defendants have 14 days from the date of this order to answer the remaining claims of Plaintiffs' amended complaint, after which the timelines and requirements of the District of Utah Local Rules will take effect.

DATED this 15th day of February, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Judge